MEKKI v. HOLBROOK, CABOT & ROLLINS CORPORATION.   (No. 7456.)

(Supreme Court, Appellate Division, First Department.   July 9, 1915.)

1. MASTER AND SERVANT ⬅278—LIABILITY FOR INJURIES—INSPECTION—QUESTIONS OF FACT.

In an action against a tunnel construction company for injuries to a shoveler through rock falling from the roof of the tunnel, a verdict for plaintiff, based upon negligence as to scaling and inspecting the tunnel roof, *held* against the weight of the evidence.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 954, 956–958, 960–969, 971, 972, 977; Dec. Dig. ⬅278.]

2. MASTER AND SERVANT ⬅293—LIABILITY FOR INJURIES—SAFE PLACE—INSTRUCTIONS.

In an action against a tunnel construction company for injuries to a shoveler by rock falling from the roof of the tunnel, an instruction that the master is chargeable with the duty to provide an employé with a reasonably safe place in which to work, that the rule applies where the place was prepared for the servant when he began work, or where he began work with an assurance of safety, and that such duty cannot be delegated, was error, since the doctrine of safe place is not applicable, where the danger is due to the manner in which the work is prosecuted.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1148–1156, 1158–1160; Dec. Dig. ⬅293.]

3. MASTER AND SERVANT ⬅286—ACTIONS FOR INJURIES—PLACE OF WORK—QUESTION FOR JURY.

In an action against a tunnel construction company for injuries to a shoveler through rock falling from the roof of the tunnel, evidence that plaintiff's foreman ordered him to work at the place where he was injured, after having his attention called to a prior fall of stone and having promised to fix it, was sufficient to warrant the submission of the issue of negligence to the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1001, 1006, 1008, 1010–1015, 1017–1033, 1036–1042, 1044, 1046–1050; Dec. Dig. ⬅286.]

Scott, J., dissenting.

Appeal from Trial Term, New York County.

Action by Bela Mekki against the Holbrook, Cabot & Rollins Corporation. From a judgment for plaintiff, and an order denying a new trial, defendant appeals. Reversed, and new trial ordered.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Benjamin Patterson, of New York City (George Bell, of New York City, on the brief), for appellant.

Don R. Almy, of New York City, for respondent.

CLARKE, J.  [1]  The defendant had a contract for the construction of the Catskill aqueduct.  At Sixth street and Third avenue the tunnel was over 700 feet below the surface.  The work was carried on night and day by three shifts, working eight hours each.  The plaintiff was a mucker, engaged in shoveling the blasted rock into cars.  He had been on this job more than two weeks.  His hours were from 8 in the morning to 4 in the afternoon.  On the day before the accident the defendant removed certain timbering which had been in place for some time.  This timbering consisted of three frames, called bents, composed of 10x10-inch timbers placed 6 feet apart, so that from the first to the last bent was a space of 12 feet.  This timbering had been placed as a precautionary measure, solely to sustain a rock in the roof of the tunnel, about 10 feet long, which projected about 2 feet, during the process of construction, until the time came to trim.  There was no necessity for placing the timbering for any other purpose.  The rock was solid.  At the time of the accident the tunnel had been completely driven, and the trimming was being done.  It was not practicable to do that work at the locus in quo while the timbering was in place.  On the day before the accident, and before the removal of any of the timbering, holes were bored in this rock, and on the same day, after the timbering was removed, these holes were filled with explosives and this overhanging rock was blasted or "shot" out of the roof.  All this was done on the day before the accident and while the plaintiff was there.  Immediately after the firing of this shot, plaintiff's shift being over, he quit work, and came back the next morning at 8.  In the intervening 16 hours work had been continued by the other shifts.

Cameron, the night superintendent, who had 8 years' experience in tunnel work and was on duty from 8 o'clock in the evening of the night before the accident until 8 o'clock the next morning, when plaintiff went to work, testified that he saw the foreman take his men in there, and they scaled the place thoroughly, and sounded the rock, and when it was in shape they went back and worked again; that he examined that work after it was done and found it was perfectly safe; that the condition of the roof before he left in the morning at 8 o'clock was all right; that he examined it and inspected it; that he sounded the rock after they got through scaling, and there was nothing there to be taken down, so, as far as he could see, it was all right.

Uyder, a driller with 5 years' tunnel experience, testified that the day before the accident, after the shot was fired, he and another driller had scaled for one hour after the shot was fired; that on the next morning he went to work at 8 o'clock; that they were scaling when they first came down in the morning; "got hold of an iron bar and scaled the loose rocks down, and after that we were getting ready to start to drill after we knock all the loose stuff down;" that they did not leave any loose stones.

Samarsky, who was plaintiff's foreman, and had been foreman for 8 years in tunnels, testified that he had two drill runners with him when the accident happened; that the first thing in the morning he had scaled out; he took the two drill runners, and his two helpers, they had eight-pound hammers and steel bars, "and the men with the bar reached up and pinch all the rock that he saw loose—strikes the

rock with the bar—if the rock is loose they put the bar in the crack and hit it with a hammer and knock the stones down;" that after he had gone through this operation that morning there was no evidence to him that there was any stone loose in the roof; that he did not know or believe that there was any stone loose in the roof before the accident; that he had four men assisting him that morning before the muckers were put to work. There was other evidence as to scaling and inspection.

The plaintiff's story was that at about half past 8 a small-sized rock fell down; that he jumped away, and called the foreman, and showed him what had happened; that the foreman came and looked at it, and told plaintiff, "I will have it fixed," and to go down and work; that he went on working, and that between 9 and 10 a little rock fell on his neck; that he tried to jump away and hollered, "Look out everybody!" but a big rock fell, rolled over, caught him on his left hip, knee, and feet, and caused the injuries complained of.

There is no doubt that the plaintiff was injured by a fall of rock from the roof. But no one corroborates his testimony as to an earlier fall of a small stone at half past 8, and the foreman positively denies it, as well as any conversation with plaintiff about it, or telling him he would fix it.

The evidence in regard to scaling is conclusive. Indeed, the learned court charged:

"If the scalers failed to discover the danger of the rock falling after they had been directed to do so by the foreman, or if they omitted to properly scale, then the injury to plaintiff resulted from the negligence of the scalers, and for that negligence defendant is not liable."

He also charged:

"Risks inherent in the work, and which remain after the master has used reasonable care, are necessary risks, for which the master is not responsible."

[2] The defendant asked the court to charge that the common-law rule of the safe place to work does not apply to the facts in this case, which was denied, and exception taken. He did charge:

"The master is also chargeable by law with the duty to provide an employé with a reasonably safe place in which to work."

"Where the place was prepared for the servant, when he began work, or where he began work, with an assurance of safety, then the rule does apply."

"The duty to provide a safe place is one which the master cannot delegate to relieve himself from liability."

"To summarize: By the act of the foreman, by the failure to perform or give the plaintiff a safe place, was the defendant negligent? If he was, he is liable."

The defendant excepted to that part of the charge which left to the jury as a question of fact whether or not this plaintiff was given a safe place. We think that the doctrine of safe place was not applicable to the facts of this case (Citrone v. O'Rourke Engineering Const. Co., 188 N. Y. 339, 80 N. E. 1092, 19 L. R. A. [N. S.] 340; Henry v. Hudson & Manhattan R. R. Co., 201 N. Y. 140, 94 N. E. 623), and that it is distinguishable from our recent decision in Bitolio v. Bradley Contracting Co., 166 App. Div. 836, 152 N. Y. Supp. 307.

We think the error in the charge as to safe place to work requires reversal, and that the verdict was clearly against the weight of evidence as to negligence in scaling and inspection.

[3] We cannot, however, say there was no evidence to go to the jury, because plaintiff testified that his foreman had ordered him to work at the place where he was injured after having his attention called to the prior fall of the small stone and having promised to fix it.

The judgment and order denying a new trial appealed from should be reversed, and a new trial ordered, with costs to the appellant to abide the event. Order filed.

INGRAHAM, P. J., and LAUGHLIN, J., concur. McLAUGH-LIN, J., concurs in result. SCOTT, J., dissents.